UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

Jane Doe,

        *Plaintiff*,                              No. 1:24-cv-9852-JLR

       v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a
COMBS ENTERPRISES LLC, BAD BOY
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC.,
BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, and
ORGANIZATIONAL DOES 1-10,

        *Defendants*.

---------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**THE BUZBEE LAW FIRM**
David Fortney (*admitted pro hac vice*)
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

**CURIS LAW, PLLC**
Antigone Curis
52 Duane Street, 7th Floor
New York, New York 10007

Plaintiff Jane Doe ("Plaintiff"), by and through her undersigned counsel The Buzbee Law Firm and Curis Law PLLC, hereby files this Memorandum of Law in Opposition to the Combs Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth herein, the instant motion should be denied.

### I.    PRELIMINARY STATEMENT

This matter is not time-barred. As detailed herein, the Victims of Gender-Motivated Violence Protection Law ("GMVL") opened up the statute of limitations for claims arising from gender-based violence, such as the sexual assault here, allowing previously barred claims to be brought prior to February 28, 2025. The black letter of the VGMVPL states "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, a civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." N.Y.C. Admin. Code § 10-1105(a). Thus, any claim which had expired under any applicable statute of limitations was revived and permitted to be filed after February 28, 2023 but before March 1, 2025. Accordingly, Plaintiff's complaint is timely. Moreover, the GMVL is not preempted by either the Adult Survivor Act ("ASA") or Child Victims Act ("CVA"), as Defendants contend, because neither is a "comprehensive regulatory scheme" or otherwise qualifies as having preemptive effect.

### II.    FACTUAL ALLEGATIONS

Plaintiff and her female friend visited New York City in December of 1991 to spend Christmas with two of her friends who lived in the city. After the holiday, Plaintiff stayed in the city to attend an event she was invited to by another acquaintance of hers, a rapper who was prominent in the industry at the time. The event was a charity basketball game occurring at City

College in New York City on December 28, 1991. Plaintiff and her female friend were dropped off at the event early so that they could get in to see the rapper who invited her. She spoke to security she and her friend were let in ahead of the crowd.

Once inside, Plaintiff watched security attempt to contact her rapper friend via radio, but was unable to. Plaintiff recalled him telling her to ask for his co-sponsor of the event if no one could find him when she got there. That co-sponsor was an up and coming producer by the name of "Puffy" (Combs). Plaintiff asked to be directed to Puffy, despite not knowing who that was. She and her friend were taken to an office at the back of a locker room, where Combs had a makeshift dressing room set up. He introduced himself and his bodyguard, who then stood outside the door while they talked.

Plaintiff's friend told Combs how excited she was to be there and how much she wanted to meet some of the other celebrities there. After mentioning her favorite rapper, Combs said that he could take her to see him, and that Plaintiff should stay and keep waiting for Myers. Plaintiff did so, but Myers did not arrive. Eventually, Combs returned with a plastic cup full of what he purported to be Coca-Cola. Plaintiff drank some of it but did not finish it as she did not like the taste.

Plaintiff began to feel woozy and attempted to leave to find her rapper friend on her own, but Combs blocked her exit. He told her she needed to stay and that is when she noticed he was touching himself in a suggestive manner. He began to fondle Plaintiff and overpowered her when she struggled. Combs removed her underwear and began molesting her before climbing on top of her and penetrating her.

Shortly after the assault began, Combs was called to the door by the bodyguard who was standing watch on the other side of it. Combs came back and told Plaintiff he had to go deal with

something. Plaintiff told Combs what he did was not right and she needed to tell her rapper friend because she was there to see him and did not want him to think that she had sex with Combs willingly. Combs told her that she should not do that because "people can come up missing," and that he would never know.

Plaintiff waited in the room for a short period to gather herself and make sure Combs was not returning, then took the opportunity to leave. The scene outside was chaotic. There were people packed into the building and running in every direction. Plaintiff spent about half an hour looking for her friend before finding an exit. Plaintiff eventually found her friend and the two of them made it to a phone to call for a ride home.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure embrace a very liberal pleading standard. *See* Fed. R. Civ. P. 8 (General Rules of Pleading). Under Rule 8, a pleading need only contain a statement of jurisdiction; a short and plain statement of the claim showing the plaintiff is entitled to relief; and a demand for relief sought. *See* Fed. R. Civ. P. 8(a).

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the form and sufficiency of a statement of a claim under this liberal pleading rule. Since the enactment of the Federal Rules, federal courts have developed a well-settled set of principles when reviewing a complaint in response to a motion to dismiss for failure to state a claim under Rule 12(b)(6). These principles include: (1) that the plaintiff's factual allegations contained in the complaint are accepted as true; (2) that the court must construe the complaint liberally in favor of the plaintiff and draw all reasonable inferences in favor of the plaintiff; (3) that the court may not consider matters or information beyond what is stated on the face of the complaint, judicially noticed facts, and any attachments to the complaint; (4) that the complaint must provide notice to the defendant of the

3

plaintiff's claims; and (5) that the court should not dismiss the complaint for failure to state a claim unless it appears <u>beyond doubt</u> that it is impossible for the plaintiff to prove some set of facts in support of a claim which would entitle the plaintiff to relief.

This standard was modified slightly by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Following these cases, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations that are sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In other words, a plaintiff can no longer stand on the "mere possibility of misconduct;" rather the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79 (quotation and citation omitted). Determining whether a complaint states a plausible claim for relief is a context-specific undertaking for the court. *Id*. ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."). In performing this duty, the court considers the complaint in its entirety, as well as documents incorporated into the complaint by reference, and matters of judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Under *Twombly* and *Iqbal*, the Combs Defendants cannot meet the standard required for the Court to grant their motion to dismiss, and the motion must therefore be denied.

## IV.   ARGUMENT

**A.    Plaintiff's Claims are Not Time-Barred**

Plaintiff's claims are not time-barred because the GMVL opened the statute of limitations for matters otherwise time-barred until March 1, 2025, and Plaintiff filed this action on December 20, 2024, well within that window.

Defendants argue that the Complaint should be dismissed as time-barred on two (2) theories – (1) that the 2022 GMVL amendment did not revive Plaintiff's GMVL claim and, (2) that even if it did, the claim would be preempted by the ASA and the CVA and therefore time-barred because Plaintiff's Complaint was not filed within the windows afforded by either statute. Defendants misconstrue the plain language of the GMVL and seek to apply an overly broad interpretation of preemption laws. Thus, Defendant's motion should be denied.

> 1. *The GMVL clearly allows any and all otherwise time-barred claims to be brought before March 1, 2025.*

First, the language of the GMVL clearly states "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." N.Y.C. Admin. Code § 10-1105(a). While the GMVL ordinarily provides a statute of limitations of seven (7) years for violations of the GMVL, the January 2022 amendment specifically carved out a two- and a half-year window for any and all claims that were otherwise time-barred by any other statute of limitations. N.Y. C.P.L.R. § 10-1105(a). The amendment, therefore, opened the window for "any civil claim or cause of action . . . that is barred because the applicable period of limitation has expired." *Id*.

Further, as originally enacted, the GMVL provided victims of gender-motivated crimes of violence with a cause of action against only the individual who perpetrated the crime. (See

5

NYC Municipal Code Title 10, Chapter 11, §10-1104, eff. Dec. 19, 2000.) Effective January 2022, the City Council amended §10-1104 to provide "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motived by gender has a cause of action against such party." (§10-1104, eff. Jan. 9, 2022.) In the same enactment, the City Council also amended §10-1105, entitled "Limitations," to provide: "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitations has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." Taken together, the two amendments (1) expanded liability to non-perpetrator defendants where no liability had previously existed and (2) revived causes of action brought under the statute whose limitations period had already expired.

Defendants' arguments are contrary to the GMVL's primary intention: to make it easier for victims of gender-motivated violence to seek civil remedies in court—not, as Defendants would have it, make it harder. New York City passed the GMVL "[i]n light of the void left by the Supreme Court's decision" in *United States v. Morrison*. N.Y.C. Admin. Code § 8-902. *Morrison* struck down the federal right of action for victims of gender-motivated violence under the Violence Against Women Act (VAWA) (42 U.S.C. § 13981), holding that Congress lacked the authority under the Commerce Clause and the Fourteenth Amendment to pass such a remedy. *United States v. Morrison,* 529 U.S. 598, 627 (2000).

"It is fundamental that in interpreting a statute, the court should attempt to effectuate the intent of the Legislature." *Cadiz-Jones v. Zambretti*, 2002 NY Slip Op 30135[U], *3, 2002 WL 34697795, at *1 (Sup. Ct. NY. Cnty. Apr. 9, 2002) (holding GMVL was intended to apply retroactively) (citing *Patrolmen's Benevolent Assn. v City of New York*, 41 N.Y.2d 205, 208

6

(1976)). The Council intended the GMVL to make it easier for victims of gender-motivated violence to seek court remedies. *Id.* It intended the same when it passed the 2022 amendment to the law. *See, e.g., City Council H'rg Testimony* (Nov. 29, 2021) at 41 (testimony in support of act's passage describing sexual abuse in 1993); Hr'g Tr. (Nov. 29, 2021) at 129–30 ("In summary, there is no timeline on processing trauma. Not passing this Bill means we would be denying what it means to be fundamentally human and denying the research and the science that it takes some of us longer than other, not only to come forward, but to tell our story."), 131 ("I am here to tell you that a victim doesn't have a set time for when they came come forward. . .. Please pass the amendment to allow the window for justice to be pursued by all victims of gender-motivated violence." (emphasis added)). "Based on an analysis of statutory text and history" it is clear that "the legislative body intended [the GMVL] to apply retroactively." *Cadiz-Jones*, 2002 WL 34697795, at *1.1. The Complaint is not time barred the claim is valid.

### 2. ii. The GMVL is not preempted by the ASA.

Defendants are incorrect that the GMVL's revival statute is preempted by the Child Victims' Act ("CVA") or Adult Survivors' Act ("ASA"). Defendant's notion that these laws command "field preemption" is an extreme expansion of the actual language and intended application of the ASA and the doctrine of field preemption itself. Field preemption only "prohibits a local government from legislating in a field or area of the law where the legislature has assumed **full regulatory responsibility**." *Doe v. Black*, 23-CV-6418 at 5 (JGLC) (S.D. N.Y. Sep 27, 2024) (citation omitted) (emphasis added). "[T]he mere fact that a local law may deal with some of the same matters touched upon by state law does not render the local law invalid." *Id*. at 6 (quotations and citations omitted). Here, just one aspect of local law is at issue -- the statute of limitations, not the entire regulatory responsibility of the legislature. The ASA and CVA were

7

intended to expand the statute of limitations, not limit it, which is consistent with the purpose of the GMVL. Likewise, the GMVL is not preempted by the ASA due to "conflict preemption" because the statutes do not conflict – they are actually consistent with one another in providing victims an opportunity to be compensated by those who victimized them. Judge Clarke of the Southern District of New York thoroughly analyzed this issue and found that field preemption did not bar the revival statute, that the ASA and CVA did not indicate an intent to occupy the field, that the ASA and CVA were not a "comprehensive and detailed regulatory scheme," and that conflict preemption did not bar the revival statute. *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929, *6-20 (S.D.N.Y. 2024). Judge Clarke's opinion establishes that there is no basis on which to find preemption of the GMVL's revival window.

**B.     The Corporate Defendants May Be Liable on a Theory of Successor Liability**

As shown in section A(1) above, the expansive scope of GMVL's amendment indicates that it should apply retroactively to the Company Defendants. And, further, the Combs Defendants are incorrect that the Complaint does not allege sufficient facts indicating the company defendants' potential liability. When deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, U.S. App. LEXIS 12600, *5 (2d Cir. Jun. 13, 2008). Therefore, in considering Defendant's motion to dismiss, the Court must accept as true all of the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *Rolon v. Henneman*, 517 F.3d 140, 142 (2d Cir. 2008). Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *Leavitt v. Bear Sterns & Co.*, 340 F.3d 94, 101 (2d Cir. 2007).

The Company Defendants assert that they are not liable due to the fact that they were not in existence at the time of the alleged conduct. However, they do not take into account the concept and notion of successor liability, which is entirely applicable to the matter at issue. The doctrine of successor liability applies to this case as Company Defendants are responsible for the acts, omissions and liabilities of its predecessors. *See Schumacher v. Richards Shear Company, Inc.* 59 N.Y. 2d 239 (Ct. App. 1983), in which the Court of Appeals held that a successor corporation or entity, and/or an entity which formed as a result of a merger, could be responsible for the liabilities of a predecessor entity. The Court stated, "A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

In *Simpson v. Ithaca Gun Co*. LLC 50 A.D. 3d 1475 (4th Dept, 2008), the Court stated that the premise that a successor corporation may be responsible for liabilities of a predecessor corporation is based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased.

Defendants make reference to the fact that in 2004 certain Company Defendants did not exist, insinuating that the companies had no affiliation or relationship with each other. However, their argument is misplaced. Indeed, where a successor purchases all or almost all of the predecessor corporation's assets, or the successor assumes a form nearly identical to that of the predecessor corporation, this may be sufficient to impose liability on the successor. *Burgos v.*

9

*Pulse Combustion, Inc.*, 227 A.D. 2d 295 (1st Dept. 1996). Discovery is needed and essential to ascertain this information.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny the Combs' Defendants' Motion to Dismiss in its entirety.

Dated: April 25, 2025

         Respectfully submitted,

### CURIS LAW, PLLC

By: */s/ Antigone Curis*

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

### THE BUZBEE LAW FIRM

David Fortney (*admitted pro hac vice*)
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909